### HODGE v. HODGE.

1. ADVERSE POSSESSION—TITLE—STATUTE OF LIMITATIONS.—Possession of land under deed executed in 1870 must be continuous for twenty years to ripen into title, and a possession for fifteen years, and then a possession by plaintiff's grantee for several years under deed set aside for fraud, and six years possession thereafter by plaintiff, will not fulfill the requirement.

2. EVIDENCE.—TITLE cannot be proven by proof of a deed without proof of title in grantor.

3. CHARGE—JURY AND JURY TRIALS.—It was error to instruct the jury that one not a party to a cause in judgment had knowledge of the fraud therein adjudged, because there is no testimony on that point in this case; and if there had been, that would have been a question for the jury.

Before BUCHANAN, J., Clarendon, October, 1898. Reversed.

Action for possession of land by Annie E. Hodge against Alice Hodge and Harvey L. B. Hodge. The jury were instructed as follows, omitting formal parts:

In the outset, Mr. Foreman, I will say that the Court can give you the law, and you must take the law as given you by the Court; he can't express an opinion on the facts, they are entirely with you, because, under our Constitution, our system is such that the Judges cannot charge upon questions of fact. You are to be impartial in the trial of all issues. You solve all questions of fact on this side of the Court. There are certain presumptions that are raised by law. A person in possession is presumed to have a title. And another presumption is that the person who has legal title to premises is presumed to have possession also, and all those who are in possession hold under him or in subordination to his legal title. You may have title to 20,000 acres of land, and it may be there is twenty different persons on the premises, the law presumes that those twenty persons are there by permission and acquiescence, and that their holding is a matter of presumption, and the whole thing is referable to the paper

title; but if a person holds possession for ten years, adverse, openly, adversely, continuously and uninterruptedly, as against the title of the person who holds the legal title, that ten years possession is against the person who has the written instrument. If that be so, that possession for ten years, uninterrupted, continuous, notorious and open to the world, is a title; it gives the person so in possession a title against the real owner; the possession, therefore, is a legal one. The law says that the party in possession, who uses the land, must use it against the interest of the party who holds the legal title. It must not only be against the interest, but it must be openly, notoriously, uninteruptedly for ten years, to acquire a title. A person to acquire title by possession, his possession must be notorious; it must not only be notorious, but it must be uninterrupted, must be continuous, and it must be adverse. If a person is claiming under some instrument, this possession must be within the boundaries described in that instrument; or if he does not claim under a written instrument, but claims by actual possession, he must be actually in possession, cultivating and using the land.

Now, Mr. Foreman, in delivering to you the charge upon this instrument, I don't mean to intimate to you in the least any question of fact—about which I say nothing, I can say nothing; the Judge cannot indicate his leaning on any question of fact. The facts are entirely with you, and I leave them with you. You notice that they have introduced a deed from J. Lawrence Nelson to Annie E. Hodge, dated in 1870 (I mean, by way of illustration); by this I don't mean to say that there is any possession under a title or anything of that sort. I don't mean to say that. Title don't mean right to possession. The title and the actual possession are different. I use the word title, I mean the sum total of it. If the plaintiff went into possession and got a deed in 1870, and there is no other deed and there is no conveyance by her; if there were no conveyance, and there is such an adverse possession as I have charged you awhile ago, the law would say that adverse possession would presume a title since

1870; or the deed being given her in 1870, the party having the right to grant her the possession, by that written instrument granting her title in 1870, the presumption is that she is the owner, and those who are in possession, if any are in possession, they are not supposed to be holding in conflict with her title, but in subordination to it. I will read you section 101 of the Code, which is as follows: "In every action for the recovery of real property or the possession thereof, the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time required by law; and the occupation of such premises by any other person shall be deemed to have been under and in subordination to the legal title, unless it appear that such premises have been held and possessed adversely to such legal title for ten years before the commencement of such action." Now, you see, Mr. Foreman, the legal title, the person who has the legal title, is the owner, unless the question of adverse title comes in. While the plaintiff must show that she has been in possession within ten years time, and must show that the land is really hers, and that she is entitled to the immediate possession, the defendant can rebut that by showing that the premises are not in him, that there is no deed, no legal title in him, nor that which could be called a title. The title must be in the plaintiff before he can recover—the title must be in the plaintiff, the plaintiff being called upon to prove her case by its own strength, and not on the weakness of the title of the defendants. So, then, the plaintiff has introduced a deed which may include the premises, or it may not include the premises here in dispute, that is a question of fact about which I cannot intimate to you anything. Suppose there is no other title, you see that she is still the owner, because that is the legal title. You see that she is still the owner, because the person from whom she received it being entitled to the land, this being an ordinary title, the titles conveyed to her—if, indeed, a title was conveyed—and having the title in her still, still she presumed to be in possession of the premises, and if there is any

other person in possession of the premises, then they are there by her holding. If adverse possession is subsequently set up by the defendant, it must be proved by him. He must rebut the presumption that the land is in the person having the legal title.

Now, Mr. Foreman, something has been said here, and before I submit the case it is my duty to instruct you what was done under this instrument here, and by that I don't mean to indicate that the land is the same, that the boundaries are the same—those are questions for you to find, whether this is a part of the land or not. I read to you, and counsel has read it to you, in the case entitled Anna E. Hodge *v.* Isaac T. Hodge, here are the allegations. Only the main issues I call your attention to. You will notice the fact that a deed was put in evidence, to Mrs. Hodge in 1870, and another by herself to Isaac Hodge in 1885—December— which counsel have called your attention to as having been passed upon in this action, the complaint of which I hold in my hand. In the complaint, "Anna E. Hodge complains that she is the widow of Abram Hodge, deceased, and at the time of her marriage she was the widow of Joel Williams, deceased; that in the distribution of the estate of Joel Williams she received a considerable sum, a part of which money was invested in a tract of 100 acres of land, situated in Clarendon County, said lands bordering on lands of W. M. Youman, W. H. Gaillard and others and Black River swamp, and a deed of conveyance for same made to J. L. Nelson." The question for you is whether that is the same land or not. "That her right and title to said land was unquestionable, and she continued in the peaceable possession of same from the date or shortly after the date of her deed until the latter part of December, 1885." That is the record here. That her husband, Abram Hodge, departed this life the 7th December, 1885. That about the 17th day of December, 1885, the plaintiff, who is a small, delicate and weak person, desiring to consult an attorney, put herself under the care and protection of Harvey L. B. Hodge, who is a son of

said Abram Hodge, by a former marriage, who, instead of
conducting her to see her attorney at Manning, against her
will forcibly compelled her to go to the house of the defend-
ant, Isaac Hodge, where she was kept under surveillance for ·
twenty-four hours, and while there, she, plaintiff, was pre-
sented with a paper to be signed by her, and which she did
sign, under fear and apprehension of her life, caused by the
action and the words of the said Isaac Hodge. That said
Isaac Hodge has commenced proceedings against the plain-
tiff to oust her of the possession of said land, and that the
plaintiff has been summoned before a trial justice, &c. And
it goes on to say: "That whatever may be its form and
terms, it was totally without consideration, and was pro-
cured from her without a knowledge of what she was doing,
and her signing same was under fear that if she refused to
sign the paper, so seeming to be her deed, that her life would
be in jeopardy. That since said deed was signed, and as
soon thereafter as she could, she consulted counsel, and has
ever retained them as her counsel who have been conducting
her case, and this she alleges, that she may present in this
complaint a cause of action which a frail, weak woman, yet
desiring to have her rights, and those rights herein properly
determined, could reasonably pursue. Wherefore, plaintiff
prays that the defendant, Isaac Hodge, and the said P. G.
Benbow, trial justice, and all others thereunto moved by
them, may be restrained from further proceedings to eject
plaintiff from said premises. That said defendant may be
required to produce the deed so obtained by him under duress
before this Court, that the same may be adjudged null and
void, and by the order of this Court cancelled. That her
possession and right of possession, as against unjust and
outrageous claim of the defendant, may be fully explained
and settled by the judgment of this Court. That she may
have such other and further relief herein as may be just and
right," &c. You see in this action that there is an assertion
of title on the part of the plaintiff to these premises named
in this complaint. This is the complaint in this action, taken

from the judgment roll. She says that she is the owner of that land—that the defendant here in this suit, with H. L. B. Hodge, through deceit deprived her of her rights. The Court submitted to the jury one query, that the jury returned by its foreman, that it was done through fraud. That is to be taken as responsive to the allegation made in the complaint, and the issues made from the complaint and answer. And it means what? It means that certain facts set out in the complaint was obtained through fraud. The Court then passes an order, and says that the deed should be cancelled.

Now, Mr. Foreman, the deed made by her in 1885 was cancelled. That was in 1891, and the deed was made by her in 1885, to Isaac Hodge, which was fraudulent and was cancelled, and upon that deed Isaac Hodge made a conveyance of the premises. The person who received a deed under that title—that is the title that had been made to Isaac Hodge—based his title, there being no question at the time, under the statute of limitation, upon his deed that had been adjudicated as fraudulent. Then this deed of Isaac Hodge granted no more than Isaac Hodge had in the premises, and Isaac Hodge did not have anything to convey under that deed, it having been determined that he did not have anything, no interest in the premises. Under the circumstances, the person took nothing under that deed. His title at that time, that is to say in 1891, there was not time enough for statutory limitation to ripen into a good title at that time, because he can't say that he claimed other than through that title. The men benefited can't take advantage of the fraud. Now, if that was the only title that Isaac Hodge had, and upon that he conveyed it, it did not carry any more title than Isaac Hodge had, and the Court had adjudged that title as fraudulent; therefore, that person could not be said to be in possession under a legal title, when that title had been adjudged fraudulent.

Now, Mr. Foreman, possession must have been in the plaintiff within ten years or she could not bring the suit. It

must be either a person that the law presumes to have the legal title or have been obtained by adverse possession, where there is no conflict at all, or it must have been a possession exclusively in her, so far as the defendant is concerned.    Remember, while a person has a legal title, the matter is referred back to a particular piece of paper, a written instrument, showing that the owner had title, written instrument, in him.    If there had been a conveyance giving it to him, he is said to receive that possession, and the presumption is that his holding of the possession of the premises is consistent with the title he had.    A man goes into possession, and sets up an adverse possession, actual or constructive; by construction is meant that possession given to a person by a written instrument of some sort.    His possession must be consistent with the written instrument.    All that he is entitled to hold is the boundaries described in the written instrument.    Where his holding is for ten years, adverse, uninterrupted, not under a written instrument that describes his possession, but where he goes into possession not under a written instrument at all, but from some element of the holding adversely to that of the owner, then his possession is what he is actually occupied, that protected by substantial enclosure.    That is such an occupation that is called possesssion, and a written instrument is what is said to be actual possession.    Where it is protected by substantial enclosure, or cultivated or employed in connection with the cultivated land, such as furnishing timber for fencing, &c.

The plaintiff claims that she is entitled to these premises, and so asserts her demand under this proof; the defendants say that they are in possession, and say that they have a right to be there, because the title is in them.    It is for you to say, under the charge that I have given you, who has the title to this land; and by title I don't mean to say that there is any title one way or the other—that is a question of fact for you, about which I say nothing.    It is upon you to say to whom this land belongs, and you may consider that, so far as the defendant here is concerned, he has knowledge of the fraud

determined in this Court, because the complaint specifically is that his possession is the same identical possession as the defendants, and have the same name. I am talking of the husband and not the wife. The complaint states the reason of that action, that a certain written instrument was caused to be signed, and the Court afterwards set it aside as fraudulent. So the fact goes back to you, who is the owner of these premises. If you think that the plaintiff has made out her case by the preponderance of the evidence, you say we find for the plaintiff; and if you come to the conclusion that she is entitled to damages, you say we find for the plaintiff, and so many dollars damages, if there be any damages proved. If you find for the defendant, you just say we find for the defendant. If you come to the conclusion that there has been no damages sustained, you simply find for the plaintiff. If you find for the plaintiff, you say we find for the plaintiff, the land in dispute and so many dollars damages, or we find for the defendant.

Mr. Rhame: I do not know what your Honor means as to the introduction of that deed. It was introduced by the plaintiff, and it was from I. T. Hodge to Alice Hodge and children, and not to H. L. B. Hodge.

The Court: It is for you, gentlemen—it is a question for you whether the persons be the same, and whether at the time there was any knowledge on the part of the defendant that certain things were done—those are questions for you. He denies each and every allegation in the complaint; he denies that the plaintiff has been in possession within ten years, and he claims that he is the owner under a written instrument, and has been in possession for ten years, and so on. I have studiously avoided reading anything to you from this judgment roll that would encumber the other issues. I read only so much, and for the purposes of showing you the whole thing and getting it before you, whether the defendant, H. L. B. Hodge, is bound in any way.

Mr. Rhame: I would like you Honor to instruct the jury that only the parties and those who are shown to have been

privies are bound by the proceedings and judgment referred to by your Honor.

The Court: The Court does not instruct on questions of fact; the law compels me to charge on written instruments, and I don't propose to shirk that responsibility.

From judgment for plaintiff, defendants appeal on following exceptions:

1. Because at the close of the plaintiff's case, the defendants having moved the Court for a nonsuit on the following grounds: That the plaintiff has not shown any title in herself to the land in question, nor has she shown title in any one else from whom she claims, by length of possession or otherwise; it is respectfully submitted that his Honor erred in refusing to grant such motion.

2. His Honor erred in instructing the jury as follows: If the plaintiff went into possession and got a deed in 1870, and there is no other deed and no conveyance by her. If there is no conveyance and there is such an adverse possession as I have charged you awhile ago, the law would say that adverse possession would presume a title since 1870; or the deed being given her in 1870, the party having the right to grant her the possession by that written instrument granted her title in 1870, the presumption is that she is the owner, and those who are in possession, if any are in possession, they are not supposed to be holding in conflict with her title.

3. His Honor erred in saying to the jury, while discussing the pleadings, that he (evidently referring to the defendants in this action) does not claim that he actually occupies the land.

4. His Honor erred in saying to the jury: You notice that they introduced a deed from J. Lawrence Hodge (Nelson) to Anna E. Hodge, dated in 1870; this was stated as a fact, without telling the jury whether the introduction of the deed was made by plaintiff or defendants.

5. His Honor erred in reading section 101 of the Code of

Procedure to the jury, without charging them, also, that the law so read could only apply to the case at bar if warranted by the facts.

6. His Honor erred in saying to the jury: While the plaintiff must show, Mr. Foreman, that she has been in possession within ten years time, and must show that the land is really his (hers), and that he (she) is entitled to immediate possession, the defendant can rebut that by showing that the premises are not in him, that there is no legal title in him, nor that which could be called a title.

7. His Honor erred in instructing the jury as follows: Suppose there is no other title, you see that she is still the owner, because the person from whom she received it being entitled to the land, this being an ordinary title, the titles conveyed to her—if, indeed, a title was conveyed—and having the title in her still, she is presumed to be in possession of the premises, and if there is any other person in possession of the premises, then they are by her holding. If adverse possession is subsequently set up by the defendant, it must be proved by him. He must rebut the presumption that the land is in the person having the legal title.

8. It is respectfully submitted that his Honor erred in the following manner in the delivery of his charge to the jury: Now, Mr. Foreman, something has been said here, and before I submit the case it is my duty to instruct you what was done under this instrument here, and proceeding down to, inclusive of the words, that she may have such other and further relief herein as may be just and right, his Honor read and commented upon the proceedings in the case of Anna E. Hodge against Isaac T. Hodge, which said proceedings are hereinbefore set forth, the complaint having been read out by his Honor in its very words to the jury.

9. His Honor erred while commenting on the effects of the proceedings last mentioned in saying to the jury: This is the complaint in this action taken from the judgment roll. She says that she is the owner of the land. That the defendant here in this suit, H. L. B. Hodge, through deceit de-

prived her of her rights.    The Court submitted to the jury one inquiry—that the jury return, by its foreman, that it was done through fraud.    That is to be taken as responsive to the allegations made in the complaint, and the issues made by the complaint and answer.

10. His Honor erred while further commenting on the effects of the proceedings in the said case of Anna E. Hodge against Isaac T. Hodge, in instructing the jury as follows: Now, Mr. Foreman, the deed made by her in 1885 was cancelled.    That was in 1891, and the deed was made by her in 1885 to Isaac Hodge, which was fraudulent and was cancelled, and upon that deed Isaac Hodge made a conveyance of the premises.    The person who received a deed under that title—that is the title that had been made to Isaac Hodge—based his title upon a deed that had been adjudicated as fraudulent.

11. His Honor erred in instructing the jury as follows: Then this deed of Isaac Hodge (referring to the deed of Isaac Hodge to Alice Hodge and children), granted no more than what Isaac Hodge had in the premises, and Isaac Hodge did not have anything to convey under that deed, it having been determined that he did not have anything—no interest in the premises.

12. His Honor erred in saying to the jury, while referring to the last mentioned deed, that under the circumstances the person took nothing under that deed, his title at that time, that is to say, in 1891, there was not time enough for statutory limitation to ripen into a good title at that time, because he can't say that he claimed other than through that title.

13. His Honor erred in instructing the jury as follows: And you may consider that so far as the defendant here is concerned, he had knowledge of the fraud determined in this Court.

*Mr. Joseph F. Rhame,* for appellants, cites: *Occasional acts of trespass would not prevent defendants from standing*

18—56

*on adverse possession:* 22 S. C., 366. *Mere prior possession does not dispense with necessity of proof of title:* 15 S. C., 263. *In 1870. twenty years adverse possession were required to confer title:* 14 Stat., 145, 146; 30 S. C., 235. *Instruction calculated to mislead is erroneous:* 8 How., 366. *Proof of grant, or such possession as will confer it, is necessary to prove title:* 36 S. C., 384. *Portion of charge covered by the 7th exception was as to matters of fact:* Con. 1895, art. IV., sec. 26; 47 S. C., 488.

*Mr. H. L. B. Wells,* contra, cites: *All defenses must be pleaded, and when not so done, cannot be relied on:* 29 S. C., 180; 4 S. C., 48; 9 S. C., 582. *A deed having been declared null and void, cannot have the effect of sustaining an allegation in another suit:* 52 S. C., 270. *If there is a scintilla of evidence to sustain the complaint, the case must go to the jury:* 52 S. C., 36, 421; 50 S. C., 25. *Charge must be construed as a whole, and only reversed where erroneous as a whole:* 46 S. C., 541, 443; 45 S. C., 146; 54 S. C., 599.

November 28, 1899. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. The action in this case was brought by the plaintiff (who seems to be spoken of in the record, indifferently, as "Annie" E. Hodge and "Anna" E. Hodge) for the recovery of possession of certain real estate, described in the complaint, situate in Clarendon County, alleged to be in the possession of defendants, and wrongfully and unlawfully withheld by them from the plaintiff. The action was commenced on the 8th of February, 1898, and was tried before his Honor, Judge Buchanan, and a jury at October term, 1898, and resulted in a verdict in favor of plaintiff, upon which judgment was duly entered. From this judgment defendants appeal upon the several exceptions set out in the record.

The plaintiff, on the trial, introduced the following evidence: 1st. A certified copy of a deed from J. Lawrence

Nelson to Anna E. Hodge, dated 15th of October, 1870, which, though spread upon the record on the 17th of October, 1870, in the proper office, was never probated.   2d. A certified copy of a deed from Anna E. Hodge to Isaac T. Hodge, dated        day of December, 1885, and duly recorded on the 18th of January, 1886.   3d. A deed from Isaac T. Hodge to Alice Hodge and children, dated 16th of March, 1887, and recorded 2d of June, 1888.   *Note*—this deed, though stated *in the "Case"* to bear date 16th of *May,* 1887, appears, from the copy set out in the "Case," to bear date 16th of *March,* 1887; but this discrepancy does not seem to affect the questions in the case.   4th. Judgment roll in the case of Anna E. Hodge *v.* Isaac T. Hodge, which was supplemented by the entries in the journal of the Court of Common Pleas for Clarendon County, likewise introduced in evidence, which shows that an action was commenced on the 19th of January, 1889, by said Anna E. Hodge against said Isaac T. Hodge for the purpose of setting aside the deed from Anna E. Hodge to Isaac T. Hodge, bearing date        day of December, 1885, above referred to, which culminated in a judgment rendered 28th of February, 1891, setting aside said deed for "fraud, deceit and duress," and also setting aside "the deed of Isaac T. Hodge to Anna E. Hodge, dated the same day of the date of the above deed."   5th. The oral testimony of the plaintiff and her son, Wm. Drose, as to the possession of the land in dispute, which will hereinafter be more particularly referred to.

At the close of the testimony on behalf of the plaintiff, the defendants moved for a nonsuit upon the ground : "That the plaintiff has not shown any title in herself to the land in question, nor has she shown title in any one else from whom she claims by length of possession or otherwise."   The motion was refused, to which exception was duly taken, and the defendants offering no testimony, the case went to the jury under the charge of the Circuit Judge, a copy of which is set out in the "Case," which with the exceptions filed by the de-

fendants, should be embraced by the Reporter in his report of the case.

The exceptions impute error to the Circuit Judge—first, in refusing the motion for a nonsuit, and second, in sundry of his instructions to the jury. Without following the exceptions *seriatim,* we propose to consider two general questions: 1st, whether there was error in refusing the motion for a nonsuit; 2d, whether there was error in any of the instructions, material to the case, given to the jury. This being an action for the recovery of real estate in the possession of another, the rule is too well settled to call for, or warrant, the citation of any authority, that the plaintiff must recover upon the strength of his own title and not upon any defects in that of his adversary. So that, in considering the question as to the nonsuit, the inquiry is whether the plaintiff has failed to offer any testimony tending to show title in herself. The rule is equally well settled that in an action to recover real estate, the plaintiff must show: 1st, either a grant from the State for the land in question to himself, or to some one with whom he can connect himself, or he must show such a length of possession—twenty years—in himself, or in some one with whom he can connect himself, as would authorize the presumption of a grant; 2d, or he must show that both he and his adversary claim from a common source of title, and that he has the better title of the two; or 3d, he must show such an adverse possession in himself or in some one from whom he can trace title, as would give him a title under the provisions of the statute of limitations, which, as we shall see, varied at different times as to the length of such adverse possession as would confer title. Applying these principles to the case under consideration, it is very obvious that the plaintiff failed to offer any testimony whatever tending to show that she had acquired title in the mode first indicated; for there was no testimony that the land in question had ever been granted either to the plaintiff or to any one under whom she claimed; and no testimony that any one had ever had posses-

sion for a sufficient length of time to presume a grant. The deed from J. Lawrence Nelson to the plaintiff only tended to show that she acquired whatever title, if any, Nelson had, but there is not a particle of testimony tending to show how or when, if ever, Nelson acquired title. Certainly no paper title was introduced, and the plaintiff, in her testimony, says that she does not know how long Nelson had been in posses- sion, and there was no other testimony tending to show the length of his possession. It is equally obvious that the plaintiff failed to introduce any testimony tending to show that she had acquired title in the mode second above indi- cated, for there is no testimony whatever tending to show that these parties claimed from a common source of title. Indeed, such a position does not seem to have been taken in the case, and the Circuit Judge in his charge makes no allu- sion to any such claim. It only remains to inquire whether the plaintiff introduced any testimony tending to show that she had acquired title in the third mode above indicated, to wit: by adverse possession for a sufficient length of time to give her title under the provisions of the statute of limita- tions, as recognized in the case of *Busby* v. *Railroad Co.,* 45 S. C., 312. This, it seems from the Judge's charge, was the main ground upon which the plaintiff relied, and should, therefore, receive careful consideration. The evidence as to the length of plaintiff's possession of the land is derived from her own testimony, in which she says she was in possession from 1870 to 1885—a period of about fifteen years. She also says that she last lived on that land "eight years ago," and as the trial was in October, 1898, when this testimony was given, it would seem that after leaving the land in 1885, when she made the deed to Isaac T. Hodge, she returned to the land, probably, after the deed to Isaac T. Hodge had been set aside, which was on the 28th of February, 1891, and was ejected after staying there about six years; for it is alleged in the complaint, and the testimony sustains the allegation, that the defendants were in possession of the land when this action was commenced on the 8th of February, 1898. At

all events, the longest *continuous* period of which there is any evidence that the plaintiff had possession was from 1870 to 1885, a period of about fifteen years. So that the practical question is whether that period was sufficient to confer title under the law as it then stood. In the case of *Rehkopf* v. *Kuhland,* 30 S. C., 234, it was held that an adverse possession commencing in 1871 required twenty years to ripen into a right, and though continued after the act of 1873, which limited the time to ten years, it was not affected by that statute. In that case the length of the adverse possession relied on was fourteen years. The same doctrine was reiterated in the subsequent case of *Lyles* v. *Roach,* 30 S. C., 291. From these two cases it is quite clear that the plaintiff's possession commencing on the 15th of October, 1870— the date of her deed from Nelson—could not ripen into a right, and could confer no title upon her until the expiration of the full period of twenty years; and as such possession continued only until 1885, it afforded no evidence of any title in her. Any subsequent possession by the plaintiff could not be connected with her previous possession, and it is not pretented that any such subsequent possession continued for a longer period than seven years—not long enough to confer a title even under the law as it now stands. It is obvious, therefore, that the plaintiff failed to introduce any testimony tending to show that she had acquired title to the premises in dispute, in either of the modes recognized by law, and hence there was error in refusing the motion for a nonsuit. The Circuit Judge gave no reasons for refusing the motion for a nonsuit, but we suppose from that portion of his charge which is made the basis of the second exception, that he overlooked the cases above cited, which hold that an adverse possession commencing after the adoption of the Code of Procedure, March 1, 1870, and before the act of 1873, amending the Code, must continue for the full period of twenty years before it could ripen into a right, and assumed that such a possession would ripen into a right after the expiration of ten years. There was error, therefore, not

only in refusing the motion for a nonsuit, but also in that portion of the charge which is made the basis of the second exception.

The seventh exception must also be sustained, because in the portion of the charge there excepted to, it is assumed that Nelson, when he conveyed the land to plaintiff, had title thereto, when, as we have seen, there was no evidence even tending to show that Nelson had ever, in any way, acquired title to the land.

We do not know that it is necessary to consider, specifically, any of the other exceptions. We may say, however, that we are at a loss to perceive how the record of the case of Anna E. Hodge *v.* Isaac T. Hodge, is pertinent in this case. Certainly the defendants, neither of them, were parties to that action, and are, therefore, not bound by any judgment therein. In addition to this, the papers introduced in evidence by the plaintiff herself show that the deed from Isaac T. Hodge to Alice Hodge and her children, which purports to be in consideration of the sum of $700, was executed on the 16th of March, 1887, nearly two years before the commencement of the action just referred to, brought by Anna E. Hodge against Isaac T. Hodge, and nearly four years before the judgment setting aside the deed from Anna E. Hodge to Isaac T. Hodge, was rendered; and there is not a particle of testimony in this case even tending to show that either of these defendants had any participation in or even any knowledge of the fraud alleged in that case. So that these defendants were not only not parties to that case, but, so far as appears in this case, had no knowledge of it. The Circuit Judge was, therefore, in error in instructing the jury that the defendants herein were in any way affected by the judgment in that case; and certainly was in error in saying to the jury, "you may consider that, so far as the defendant here (meaning, as he afterwards explained, H. L. B. Hodge and not Alice Hodge) is concerned, he had knowledge of the fraud determined in this Court;" for there is not only no testimony in this case to sustain such a state-

ment, even as to H. L. B. Hodge, but if there had been any such testimony, it would have been for the jury, and not for the Judge, to say what they should *"consider"* it established. So that, in any aspect of the matter, the thirteenth exception must be sustained.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.